**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RONALD HORD,

       Plaintiff,

v.                                       Case No. 05-CV-73387-DT

PETER RECCHIO,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S "MOTION TO CHANGE VENUE UNDER 28 U.S.C. §1404(a)"

Pending before the court is Defendant Peter Recchio's "Motion To Change Venue Under 28 U.S.C. §1404(a)." The court has reviewed the briefing in this matter and concludes that no hearing is required. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

## I. BACKGROUND

According to the complaint, beginning in March 2002 and continuing through June 2002, Defendant Recchio and James Davis met with Plaintiff Ronald Hord in Michigan relating to a potential investment opportunity in a recreational vehicle manufacturing facility in Indiana. (Compl. at ¶ 6.) The purpose of the investment was to form an LLC "to design, manufacture and sell recreational vehicles . . . to various dealers throughout the United States, including Michigan. (*Id.* at ¶ 7.) On May 31, 2002, Defendant Recchio "caused his attorneys to forward a 'clean' execution copy of an Operating Agreement dated as of May 21, 2002 to [Plaintiff] for American Camper Manufacturing, LLC (d/b/a Ameri-Camp) ("ACM")." (*Id.* at ¶ 8.) On or about June 3,

2002, Defendant and Mr. Davis came to Michigan to present a business plan for ACM to Plaintiff.  (*Id.* at ¶ 9.)  As of May 21, 2002, ACM had three members: Plaintiff, Defendant, and Davis, with Plaintiff contributing cash and Defendant and Davis contributing services only.  (*Id.* at ¶ 12.)

On September 10, 2002, and again on November 29, 2002, Defendant Recchio requested "voluntary additional capital contributions from [Plaintiff] which [Plaintiff] contributed in the amounts of $69,644 and $69,491.53 respectively to ACM."  (*Id.* at ¶ 14.)  During 2004, Defendant "sought out interim financing for ACM to borrow against its outstanding dealer invoices during the open account period between the date on which invoices were sent to its dealers and the date on which the invoices were ultimately paid by the dealer or the dealer's floor plan financing lender, *i.e.* Bombardier Capital."  (*Id.* at ¶ 19.)  On March 19, 2004, "ACM and Crestmark Bank entered into a $1,500,000 Loan and Security (Credit Line) Agreement personally guaranteed by [Defendant] in which Crestmark Bank agreed to loan money to ACM based upon a percentage of its Eligible Accounts Receivable/Invoices due from its dealers and its Eligible Inventory."  (*Id.* at ¶ 21.)  On October 15, 2004, "the Crestmark Bank Loan and Secuirty (Credit Line) Agreement was amended and restated to include an increased principal amount of $2,500,000."  (*Id.* at ¶ 22.)

Plaintiff alleges that "sometime in 2004, [Defendant] began orchestrating a scheme to defraud Crestmark Bank by, *inter alia*, causing ACM to submit credit line draw requests supported by false invoices."  (*Id.* at ¶ 24.)  Plaintiff also contends that "[i]n addition to creating . . . false and fraudulent credit line draw requests, [Defendant], beginning in 2002, also caused ACM to create false and fraudulent financial statements

2

showing unearned revenue on its Balance Sheet in order to make it appear that ACM was a profit making enterprise when, in fact, ACM was losing money, which [Defendant] relied up [sic], in part, to make his voluntary additional capital calls in 2002 and member loan to ACM." (*Id.* at ¶ 27.)

In March or April 2005, Defendant located Fred Hassan in Florida as a potential investor. (*Id.* at ¶ 31.) On April 8, 2005, Mr. Hassan filed Articles of Organization for RV Manufacturing Enterprises, LLC ("RVME") in the state of Florida. (*Id.* at ¶ 33.) On April 28, 2005, ACM and RVME entered into an Asset Purchase Agreement and on or about April 29, 2005, RVME took over the business operations of ACM. (*Id.* at ¶¶ 38, 41.) Plaintiff alleges that "[a]s a direct, natural and proximate result of [Defendant's] fraud upon Crestmark Bank, ACM lost its source of interim financing and, in turn, its ability to pay its secured and unsecured creditors as and when their obligations became due and owing" and he "has been damaged in the amount of his investment." (*Id.* at ¶¶ 42-43.)

This case was originally filed in Monroe County Circuit Court on or about July 21, 2005. After Defendant removed this case to the United States District Court for the Eastern District of Michigan on September 1, 2005, the case was assigned to United States District Judge Paul Borman.[1] On January 13, 2006, Defendant filed a motion to transfer this case to the United States District Court for the Northern District of Indiana.[2]

---

[1]The case was reassigned to this court on December 30, 2005.

[2]On February 24, 2006, Plaintiff filed an "Ex Parte Motion For Leave To File Supplemental Response to Defendant's Motion for Change of Venue." The court will grant Plaintiff's motion, but does not find the supplemental briefing persuasive in its evaluation of Defendant's motion.

3

## II.  STANDARD

Because this case was removed from Michigan state court, the court looks to 28

U.S.C. § 1441 for the rule governing proper venue.  "Venue in removed cases is

governed solely by §1441(a)."  *Kerobo v. Southwestern Clean Fuels, Corp.,* 285 F.3d

531, 534 (6th Cir. 2002) (citing *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665

(1953)).  Under § 1441(a), the only proper federal venue is the "district and division

embracing the place where [the state court] action is pending."  *Id.*; 28 U.S.C.§ 1441(a).

Nonetheless, even when defendants remove an action to the proper venue, the case

may still be transferred under certain circumstances.

Transfer of proper venue is governed by 28 U.S.C. § 1404(a), which provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought."  This provision is "intended to place discretion in the district court to

adjudicate motions for transfer according to an 'individualized, case-by-case

consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S.

22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "A district court

'has broad discretion to grant or deny a motion to transfer [a] case.'"  *Phelps v.

McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citing *Cote v. Wadel,* 796 F.2d 981, 985

(7th Cir. 1986)).

To transfer an action under § 1404(a) the following three requirements must be

met: "(1) the action could have been brought in the transferee district court; (2) a

transfer serves the interest of justice; and (3) a transfer is in the convenience of the

4

witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D.

Mich. 1994).  Factors to consider in determining whether to transfer venue include:

(1)   the convenience of witnesses;

(2)   the location of relevant documents and relative ease of access to sources of proof;

(3)   the convenience of the parties;

(4)   the locus of the operative facts;

(5)   the availability of process to compel the attendance of unwilling witnesses;

(6)   the relative means of the parties;

(7)   the forum's familiarity with the governing law;

(8)   the weight accorded the plaintiff's choice of forum; and

(9)   trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).  Additionally, the

party seeking transfer of venue usually has the burden to establish that the new forum is

more convenient.  *Viron Inter. Corp. v. David Boland Inc.*, 237 F. Supp. 2d 812, 815

(W.D. Mich. 2002).  The court also recognizes that, under the broad language of the

venue statutes, "it is quite possible for venue to exist in more than one forum."  *Audi AG*

*& Volkswagen of Amer.*, 204 F. Supp. 2d 1014, 1022 (E.D. Mich. 2002).

### III.  DISCUSSION

As discussed above, the court examines three requirements to determine if a

discretionary § 1404(a) transfer is warranted.  The court will examine whether (1) the

action could have been brought in the Northern District of Indiana; (2) whether transfer

to Indiana would serve the interest of justice; and (3) whether transfer would further the

convenience of the witnesses and parties.  *See Kepler*, 860 F. Supp. at 398.

5

## A.  Whether The Action Could Have Been
## Brought in the Northern District of Indiana

The first step in the court's analysis is to determine whether venue would have
been proper had the action originally been filed in the transferee forum.  28 U.S.C. §
1404(a).  Because federal subject matter jurisdiction in this case is based solely on
diversity of citizenship under 28 U.S.C. § 1332, venue is governed by 28 U.S.C. §
1391(a).  "A civil action wherein jurisdiction is founded only on diversity of citizenship
may, except as otherwise provided by law, be brought only in (1) a judicial district where
any defendant resides, if all defendants reside in the same state, (2) a judicial district in
which a substantial part of the events or omissions giving rise to the claim occurred . . .,
or (3) a judicial district in which any defendant is subject to personal jurisdiction at the
time the action is commenced, if there is no district in which the action may otherwise
be brought."  28 U.S.C. § 1391(a).

Defendant currently resides in Indiana and resided in the state when the events
at issue occurred.  In addition, many of the alleged events relating to Plaintiff's
complaint occurred in the Northern District of Indiana.  The ACM facility existed and was
operated in the Northern District of Indiana and ACM maintained its bank accounts in
the Northern District of Indiana.  Therefore, this case could have been filed in the
Northern District of Indiana.

## B.  Convenience of the Parties and Witnesses

Defendant asserts that "[t]he particular allegations appearing in Hord's Complaint
make necessary the testimony of Ameri-Camp's accountants, former non-party Ameri-

6

Camp employees, the creditors who forced Ameri-Camp's bankruptcy, and Recchio himself, as well as potential testimony from representatives of Ameri-Camp's financial institutions." (Def.'s Mot. at 9.) Defendant points to three certified public accountants at Crowe: Joseph D. Cataldo, Andy Wyse, and Judy Stull. (*Id.* at 9-10.) Defendant asserts that "[t]hese accountants reviewed Ameri-Camp's financial statements on a frequent basis and provided guidance to Ameri-Camp with respect to inventory and general ledger entries daily." (*Id.* at 10.) Defendant further avers that "[t]hese accountants all live and practice in the Elkhart, Indiana area." (*Id.*) Defendant also asserts that "Scott Wenger, Gary Luft, and Becky Tusing all served as Ameri-Camp's controllers for a period of time" and "possess knowledge and information directly relevant to whether Ameri-Camp ever generated and/or submitted false and fraudulent financial statements to Crestmark." (*Id.*) In addition, Defendant identifies other employees that reside in Northern Indiana who performed job duties that relate to Plaintiff's allegations.

Moreover, Defendant asserts that "[b]esides Hord, Crestmark representatives are the only potential witnesses located in Michigan" and these representatives "fall into the 'less significant' witness category whose convenience must be accorded proportionately less importance." (*Id.* at 11.) Defendant asks that the court "give greater consideration to the people whose testimony will carry the greater probative value– i.e., those who directly participated in the creation and evaluation of Ameri-Camp's financial documents and the scheduling and invoicing of its units." (*Id.*)

7

In response, Plaintiff maintains that "[t]here is no significant convenience to one side over the other by transferring this case to Indiana." (Pl.'s Resp. at 5.)  In addition, Plaintiff asserts that "Defendant . . . [has failed] to establish that any witness from outside the jurisdiction of this [c]ourt would be unwilling or unable to testify in Michigan. (*Id.*)  Plaintiff further argues that "several witnesses listed by Defendant in its [m]otion would provide merely cumulative testimony." (*Id.*)  Plaintiff asserts that his witnesses are located in the state of Michigan and include Plaintiff, representatives of Crestmark Bank, located in Troy, Michigan, and Plaintiff's expert witness, Richard Baidas, also located in Michigan. (*Id.*)  Plaintiff asserts that "[i]n light of Defendant's failure to establish that witnesses from Indiana would be unwilling or unable to testify in Michigan, this factor does not its [m]otion for [c]hange of [v]enue."[3] (*Id.*)  Moreover, Plaintiff maintains that "where the distance between the Eastern District of Michigan and the Northern District of Indiana is relatively minimal, a transfer of venue would not appreciably increase the convenience of the parties or the witnesses." (*Id.* at 6.)

Based on the briefing presented, the court finds that many of the important witnesses who will testify in this case are located in Indiana and it would be more convenient for these witnesses to participate in this case if the case is pending in the Northern District of Indiana.  See *Thomas v. Home Depot, U.S.A., Inc.*, 131 F.Supp.2d 934, 937 (E.D. Mich. 2001) ("In weighing the convenience of the witnesses, more

---

[3]Plaintiff, however, does not identify any case law that requires Defendant to establish that "witnesses from outside the jurisdiction of this [c]ourt would be unwilling or unable to testify."  Defendant, however, has presented affidavits (attached to his reply brief) by affiants asserting that testifying in South Bend, Indiana would be more convenient than testifying in Detroit, Michigan.

important than the raw numbers of witnesses living in a particular jurisdiction is the

residence of the key witness or witnesses.  One chief witness's convenience, in fact,

may outweigh the convenience of other, less significant witnesses.") (citation omitted).

## C.  Location of Relevant Documents and Access to Proof

Defendant contends that "[s]ince, at its essence, Plaintiff . . . alleges that

[Defendant] (acting, naturally, on behalf of Ameri-Camp) submitted false and fraudulent

statements to Crestmark for the purpose of obtaining additional financing, . . . Ameri-

Camp's general ledger and other financial records [are] critical evidence." (*Id.* at 12.)

Defendant maintains that "[a]ll of Ameri-Camp's books and records documents exist in

unit files at RVME's facilities in Syracuse, Indiana." (*Id.*)  Defendant argues that "[i]n

addition . . . to the documents already discussed and identified, the 'locus' – in its truest

sense –originates in the Northern District of Indiana." (*Id.* at 14.)

Plaintiff argues, on the other hand, that access to documents is a less significant

factor in this era of "electronic discovery, e-mail, photocopying, fax machines and

overnight delivery services." (Pl.'s Resp. at 6 (citing *Coker v. Bank of Am.*, 984 F. Supp.

757, 766 (S.D.N.Y. 1997)).  Plaintiff asserts that "[d]ocuments relevant to this dispute

exist in both Michigan and Indiana, as well as other states.  For example, Crestmark

Bank is a critical non-party in this dispute.  The documents controlled by Crestmark

Bank will be necessary to both parties, and these are located within the Eastern District

of Michigan." (*Id.*)  Plaintiff also asserts that "Defendant voluntarily entered the State of

Michigan to solicit investments, on repeated occasions, from Plaintiff.  The checks

written by Plaintiff as well as the wire transfers occurred in Michigan.  Moreover, the

9

fraudulent credit line draws . . . were submitted to Crestmark Bank, located in Michigan." (*Id.* at 6-7.)

The fact remains, however, that the overwhelming majority of documents relevant to this case are indeed in Indiana and although not binding authority, the United States District Court for the Southern District of New York actually held in *Coker* that even considering the ease of transport of the documents in that case, the factor weighed "no more heavily in favor of the [current] district than the proposed transferee district" and was therefore neutral. *Coker*, 984 F. Supp. at 766. However, in the instant case, the factor does weigh more heavily in favor of transferring the case to the proposed transferee district as many of the important documents exist in Indiana.

### D.  Weight Accorded Plaintiff's Choice of Forum

Courts generally grant substantial deference to the parties choice of forum. *See e.g., Thomas*, 131 F. Supp. 2d at 937; *Steelcase, Inc. v. Mar-Mol Corp.,* 210 F. Supp. 2d 920, 938 (W.D. Mich. 2002).  Plaintiff asserts that he "resides in Monroe County, and that serves as the reason for choosing Monroe County Circuit Court to initiate this action."  (Pl.'s Resp. at 9.)  The court notes, however, that the action no longer remains pending in state court as Defendant removed this case to the Eastern District of Michigan and the weight that would ordinarily be accorded to Plaintiff's choice of forum is diminished.  See *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 947 (S.D. Ohio 2002) ("A plaintiff's choice of forum, however, is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her

10

chosen forum, which was state court."); *see also Hite v. Norwegian Carribean Lines*, 551 F. Supp. 390, 395 (E.D. Mich. 1982).

### E.  Balancing The Factors

Based on the foregoing considerations, the court determines that this case should be transferred to the Northern District of Indiana.  For example, the court finds that while some of the documents exist in Michigan, the vast majority of the necessary documents exist in Indiana.  In addition, many important witnesses reside in Indiana.

### IV.  CONCLUSION

IT IS ORDERED that Plaintiff's "Ex Parte Motion for Leave to File Supplemental Response to Defendant's Motion for Change of Venue" [Dkt. #22] is GRANTED.

IT IS FURTHER ORDERED that Defendant's "Motion to Change Venue Under 28 U.S.C. §1404(a)" [Dkt. #11] is GRANTED and this matter is TRANSFERRED to the Northern District of Indiana.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 31, 2006, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Odd
Orders\05-73387.HORD.GrantingDef.'sMotionToChangeVenue.wpd